Hart and others vs. Fraternal Alliance.

BARDEEN, J., took no part.

HART and others, Respondents, vs. FRATERNAL ALLIANCE, Appellant.

*December 7, 1900 — January 8, 1901.*

*Life insurance: Suicide: Evidence: Admissions in proofs of death: Court and jury: Reasonable stipulations as lo proofs of death: Waiver by denial of liability.*

1. In an action upon a certificate of insurance the proofs of death furnished by the beneficiaries to the insurer and showing that deceased came to his death by suicide, were competent *prima facie* evidence of that fact against the beneficiaries.
2. Upon the evidence in this case, including an admission of suicide in the proofs of death, it is *held* that the fact of suicide was conclusively proven and that a verdict to the contrary was wholly unsupported.

3. By the terms of a certificate of insurance the insurer was not liable in case of suicide, except for the amount of premiums paid by the insured; and it was stipulated that in case of an inquest a certified copy of the evidence, verdict, and proceedings therein should be attached to the proofs of death. *Held*, that such stipulation was reasonable, and compliance therewith was necessary to give a right of recovery.

4. A denial of liability by an insurer, made after the expiration of the time for furnishing proofs of death and when it could not in any way have influenced the action of the beneficiaries with respect to such proofs, does not operate as a waiver of defects in the proofs furnished.

Appeal from a judgment of the circuit court for Milwaukee county: D. H. Johnson, Circuit Judge. *Reversed.*

Action on a benefit certificate of $2,000, issued by the defendant on the life of Richard H. Hart. The beneficiary being dead, the action is brought by children of deceased. The certificate was issued upon condition that the member should comply with all existing laws, rules, and regulations of the order, and such as might, from time to time thereafter, be adopted, and which should be and form a part of the contract. At the time of Mr. Hart's death, Law 24 provided, among other things, as follows: "In case of death by suicide, whether sane or insane, except where insanity of such member shall have been prior thereto judicially determined, the entire and only liability under the contract shall be the amount of premiums paid thereon to the association by the insured, as shown by the records of the association, with interest thereon at six per cent. per annum, and the same shall be received by the beneficiary in full settlement of his policy." Law 29 required that satisfactory proofs of all claims should be filed within ninety days from date of death; that true answers should be made to all questions asked relating to the health and death of insured; and that, in case of an inquest, there should be attached to, and made a part of, such proofs, "certified copies of the evidence, ver-

dict, and proceedings on such inquest." The answer alleged noncompliance with Law 29, and also that Hart died from suicide.

Upon the trial the plaintiffs offered in evidence the proofs of death, which included the instructions of the supreme lodge; the report of the committee of the subordinate lodge of which deceased was a member; a recommendation by the lodge of payment of the claim; a certificate of the coroner that he had investigated the cause of death and that the cause of death was suicide by carbolic acid; a certificate of a friend, who also stated that the cause of death was suicide; and a certificate of the undertaker of the interment. The death occurred January 9, 1899. A demand for payment of the claim was made March 22d, and on April 28th the defendant, by its attorney, denied liability on the ground that Hart died by his own hand, and offered to pay the amount of premiums paid by deceased, with interest. Other formal proofs were made, and plaintiffs rested their case.

A motion for a nonsuit was overruled, and duly excepted to. The defendant attempted to prove that objections to proofs of death were made on the ground that they were not accompanied by a certified copy of the testimony taken by the coroner, but, under objection, the court ruled out the testimony. The defendant showed by the coroner that several witnesses were sworn on the inquest, and by the doctors who made the examination of the body that death resulted from carbolic acid poisoning.

A motion for direction of a verdict for the defendant was denied, and the court instructed the jury that the failure to attach copies of the testimony taken at the inquest was not a material omission; that the statement in the proofs of death that Hart's death was from suicide "raises a presumption against the beneficiaries;" and that the burden of proof was on them "to establish to a reasonable certainty that the deceased came to his death from some other cause than sui-

cide." A verdict was found for plaintiffs for the amount of the certificate, less the amount of premiums paid by deceased, which had been paid into court by defendant. A motion for a new trial was denied, and from a judgment for plaintiffs the defendant brings this appeal.

For the appellant there was a brief by *Quarles, Spence & Quarles*, and oral argument by *George Lines*. They argued, among other things, that the statements contained in the proofs of death were competent evidence as to the cause of death. *Hanna v. Conn. M. L. Ins. Co.* 150 N. Y. 526; *Buffalo L., T. & D. S. Co. v. Knights Templar & M. M. A. Asso.* 126 N. Y. 450; *Insurance Co. v. Newton*, 22 Wall. 32; *Insurance Co. v. Higginbotham*, 95 U. S. 380; *Keels v. Mut. R. F. L. Asso.* 29 Fed. Rep. 198; *Bachmeyer v. Mut. R. F. L. Asso.* 82 Wis. 255; *S. C.* 87 Wis. 325; *John Hancock M. L. Ins. Co. v. Dick*, 44 L. R. A. 846, note.

*M. N. Lando*, for the respondents, contended, *inter alia*, that the proofs of death were admissible only to show compliance with the condition of the policy, but not to show that death was by self-destruction. *Travelers' Ins. Co. v. Nicklas*, 88 Md. 470; *Leman v. Manhattan L. Ins. Co.* 46 La. Ann. 1189; *Home B. Asso. v. Sargent*, 142 U. S. 691. It was incumbent upon defendant to prove suicide. *Mut. B. L. Ins. Co. v. Daviess' Ex'r*, 87 Ky. 541; *Mut. L. Ins. Co. v. Wiswell*, 56 Kan. 765; *Leman v. Manhattan L. Ins. Co.* 46 La. Ann. 1189; *Fisher v. Fidelity M. L. Asso.* 188 Pa. St. 1.

BARDEEN, J. The certificate in suit provided that in case of suicide the only liability under the contract should be the amount of the premiums paid by the insured, with six per cent. interest. The proofs of death showed that deceased came to his death by suicide. The doctors who made the *post mortem* examination testified that they found a quantity of carbolic acid in the stomach of deceased; that the entire lining of the stomach was "eaten off and burned up;"

and that it was congested and swollen. Their conclusion was that death was caused by carbolic acid poisoning. Concerning this fact the evidence does not admit of reasonable controversy. As already noted, the proofs of death furnished by plaintiffs showed that the death of the insured was from suicide. Such proofs, when offered by defendant, were admissible as tending to prove the fact of suicide. They operated as admissions against interest, and, while not conclusive, were competent *prima facie* evidence against the beneficiaries. *Bachmeyer v. Mut. R. F. L. Asso.* 82 Wis. 255; *S. C.* 87 Wis. 325; *Hanna v. Conn. M. L. Ins. Co.* 150 N. Y. 526; *Insurance Co. v. Newton*, 22 Wall. 32. These admissions, taken in connection with the testimony of the doctors as to the cause of death, absolutely barred a recovery in this case, unless it was shown that such poison was not taken with suicidal intent. No such showing was made. What little evidence there is seems to point to the fact of suicide. On the day of his death deceased went to his business as usual about 6:30 o'clock in the morning. He returned home for breakfast, and again went to his shop. Between 9 and 10 o'clock he returned home, and complained of a headache. He went upstairs, and lay down on the bed. He ate no dinner. About 3 o'clock he went downstairs to the basement, to the room where the bottle of carbolic acid was kept, stayed a few minutes, and again went upstairs. About a half hour afterwards he was discovered unconscious, and soon died. He made no outcry   The bottle of acid was but partly full. The odor of the acid was discovered in the room. The evidence of the doctors showed that no one could take a sufficient quantity of carbolic acid to cause death without knowing it; that a person taking it could move about,— make an outcry or noise to attract attention. The acid was taken either intentionally or by mistake. As soon as it passed into his mouth the deceased must have felt the effect of the burning liquid. The instinct of self-preservation would have at

once prompted some outcry or noise to attract attention if it had been taken by mistake. Nothing of this kind occurred. The fact that no noise or outcry was made is strong proof against the theory of mistake or accident. These facts, coupled with the admission of suicide in the proofs of death, were so conclusive that the court should have granted defendant's motion for direction of a verdict. The verdict rendered was founded on mere speculation, and is against every reasonable probability in the case.

There is also another error committed by the court fatal to the judgment. Under the certificate, the insured and his beneficiaries were bound by the laws of the association in force at the time of his death. One of the regulations was that, in case of an inquest, a certified copy of the evidence, verdict, and proceedings therein should be attached to the proofs of death. No attempt was made to comply with this rule any further than to attach thereto a certificate of the coroner that he had investigated the cause of death. The trial court held and instructed the jury that such failure was immaterial and was no defense to the action. It was competent for the parties to stipulate such reasonable conditions as they pleased in regard to proofs of death. Generally, such conditions must be complied with, unless performance has been waived or the insurer is, by some act of its own, estopped from setting up the condition. Bacon, Ben. Soc. § 403. The following cases in this state illustrate the necessity of strict compliance with reasonable stipulations kindred to the one under consideration: *Bonner v. Home Ins. Co.* 13 Wis. 677; *Blakeley v. Phœnix Ins. Co.* 20 Wis. 205; *Cayon v. Dwelling House Ins. Co.* 68 Wis. 510; *Oshkosh M. Works v. Manchester F. A. Co.* 92 Wis. 510. No attempt is made by plaintiffs' counsel to justify the ruling of the trial court that such stipulation was immaterial. From our point of view this would be a difficult undertaking. The stipulation was certainly reasonable. Its purpose is evident. In case

of suicide the company was not liable except for premiums as before stated. The provision requiring the proceedings on the inquest to be certified was substantial and important, and designed to enable the insurer to investigate the cause of death and to ascertain whether it occurred under circumstances that would free it from liability.

Plaintiffs' counsel suggest that this requirement has been waived by the defendant. This contention is based upon the fact that, under date of March 22d, he made a written demand for payment of the loss. To this Mr. Charles Quarles, as attorney for defendant, made answer, April 28th, denying liability on the ground of suicide. Hart's death occurred January 9th, and proofs were required within ninety days. Mr. Quarles's letter was written some days after the expiration of the time for filing proofs. There can be no doubt about the general proposition that a denial of liability by an insurance company may operate as a waiver of defects in proofs of loss or excuse the failure to furnish any proofs whatever. But, to have that effect, the current of authority is that there must be shown some act or declaration by the company during the currency of the time within which the beneficiaries were required to act, from which they might reasonably infer that the insurer did not intend to rely upon failure to so furnish proper proofs. May, Ins. § 505; *Killips v. Putnam F. Ins. Co.* 28 Wis. 472; *Engebretson v. Hekla F. Ins. Co.* 58 Wis. 301; *Ermentrout v. Girard F. & M. Ins. Co.* 63 Minn. 305; *Westchester F. Ins. Co. v. Coverdale,* 9 Kan. App. 651. This doctrine of waiver is only another name for the doctrine of estoppel. It cannot be invoked unless the conduct of the company has been such as to induce action or to prevent action in reliance upon it, where it would operate as a fraud upon the other party if it should be allowed to disavow its conduct and enforce the conditions. *Insurance Co. v. Wolff,* 95 U. S. 326. The denial of liability in this case on the ground stated was made after the plaint-

iffs were in default, and could not in any way have influenced their action with respect to furnishing proofs of death. *Engebretson v. Hekla F. Ins. Co.* 58 Wis. 301. The evidence fails to show any proper ground of waiver. The failure to comply with so important a requirement not being excused, it afforded an additional ground why the verdict and judgment in this case should not stand.

*By the Court.*— The judgment is reversed, and the cause is remanded for a new trial.